## Case No. 4,591.
### EWING v. BURNET.
[1 McLean, 266.][1]
Circuit Court, D. Ohio. Dec. Term, 1835.[2]

Mr. Fox, for lessor of plaintiff.
Mr. Worthington, for defendant.

OPINION OF THE COURT. This action was brought to recover possession of lot No. 209 in Cincinnati. Both the parties claim under John C. Symmes. The plaintiff has given in evidence a deed for the lot from Symmes to Samuel Forman, dated 11th of June, 1798, who on the next day conveyed the same to Samuel Williams, whose right, on his decease, became vested in the lessor of the plaintiff. The defendant claims by deed to himself from Symmes, dated 21st of May, 1803, accompanied with an adverse possession of more than twenty years prior to the commencement of this suit. Several witnesses have been examined to show acts of ownership exercised over the lot by the defendant, such as drawing sand from it for himself, and selling sand from the lot to others, and driving those away who attempted to take the sand without leave, paying taxes for the lot, &c. It is situated directly in front of the corner of the square on which the defendant, for many years resided; and during which time, as well as afterwards, the acts of ownership were exercised over the lot. Several witnesses state that the lot was known as the property of the defendant and that he was in possession of it, not by actual occupancy, but by using it as above, for sand and gravel. The lot was not enclosed until some ten or twelve years ago. The possession of the defendant, several of the witnesses state, has been exclusive since 1806 or '7, and they had no knowledge of any

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 11 Pet. (36 U. S.) 41.]

adverse claim. The witnesses also prove that Samuel Williams resided in Cincinnati, knew of the defendant's title for the lot, and of the acts of ownership he exercised over it; but there is no evidence which shows that he ever demanded possession, took any steps to recover it, or gave notice to the defendant of his claim to the lot. One of the witnesses states that he heard Williams often declare the lot was his, and that so soon as he was able he should improve it. One of the plaintiff's witnesses states that after the defendant had made the purchase of the lot and before he received a deed for it, he had notice of the claim of Samuel Williams.

On the evidence the following charge was given to the jury: "The plaintiff having shown a deed for the premises in controversy older in date than that which was given in evidence by the defendant, on the prayer of the defendant, the court instruct the jury that his actual possession of the lot, to protect his title under the statute of limitations. must have been twenty-one years before the commencement of this suit. That suing for trespass on the lot, paying the taxes and speaking publicly of his claim, are not sufficient to constitute an adverse possession. That any possession short of an exclusive appropriation of the property by an actual occupancy of it, so as to give notice to the public and all concerned, that he not only claimed the lot but enjoyed the profits arising out of it, was such an adverse possession as the statute requires. That to constitute an adverse possession it is not essential that the property should be enclosed by a fence, or have a dwelling house upon it. If it be so situated as to admit of cultivation as a garden, or for any other purpose without an enclosure, and it was so cultivated by the defendant during the above period, it would be sufficient; or if the lot contained a coal mine. or marble or stone quarry, and it was worked the above period by the defendant, he having entered under a deed for the whole lot, such an occupancy would be an adverse possession, though the lot had no dwelling house upon it and was not enclosed by a fence. And also if the lot contained a valuable sand bank which was exclusively possessed and used by the defendant for his own benefit, by using the sand himself and selling it to others, and his occupancy of the lot in this manner was notorious to the public and all concerned; and if the defendant paid the taxes for the same, ejected and prosecuted trespassers on the lot, it being situated adjoining to the lot on which the defendant actually resided, except the intervention of a street, which had not been graded and opened so as to be used by the public; and said lot preserved the view of the defendant from his residence unobstructed, and such possession was continued the time required by the statute, it would constitute an adverse possession for the whole lot, the defendant having entered under a deed as aforesaid.

The court would also remark to the jury, that the law had been settled in Kentucky, if a person residing on a tract of land should purchase by deed another tract adjoining to it, his possession would be extended over the tract thus purchased; and this seems to be reasonable, and is sustained by the doctrines of possession as generally recognized. Had the lot in controversy adjoined the premises on which the defendant resided, the case would come within the rule, but a street intervenes between the residence of the defendant and the lot in controversy, which prevents an application of the rule in this case." [Ellicott v. Pearl] 10 Pet. [35 U. S.] 442; [Barclay v. Howell] 6 Pet. [31 U. S.] 513.

The jury found a verdict of not guilty, and a motion being made for a new trial, the cause was continued to the next term, at which term the motion for a new trial was overruled, and a judgment entered on the verdict.